UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| CHRISTOPHER APPLEGATE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-CV-267-REW |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CORRECTIONAL OFFICER WOOD, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

*** *** *** ***

The Court considers Defendants' motion for summary judgment (DE #18) and motion to dismiss (DE #19). Plaintiff, Christopher Applegate, responded (DE #24), and Defendants replied. DE #26 (Reply).[1] The motions are ripe for consideration.

For the following reasons, the Court **GRANTS IN PART** Defendant's motion for summary judgment (DE #18). Defendants Hoeck and Epperson have effectively shown the absence of a genuine dispute as to any material fact and are entitled to judgment as a matter of law. Plaintiff concedes any claim against Nitzel, so the Court includes Nitzel within the grant of DE #18. The Court further **GRANTS** Defendants' motion to dismiss as unopposed (DE #19) and **DISMISSES** Defendants John and Jane Does as parties to this action. The action remains pending only as to Defendants Wood and Wilson and

---

[1] The Court notes that, pursuant to the deadlines contained within Local Rule 7.1(c) and Federal Rule of Civil Procedure 6(d), Defendants' reply was due within 17 days of Plaintiff's March 13, 2015 Response. Defendants replied on April 3, 2015, or after 21 days. As Plaintiff has not sought to strike the filing, and seeing no prejudice, the Court considers it as part of the overall briefing and decisional record.

limited to Plaintiff's Eighth Amendment deliberate indifference claim regarding the assault by inmate Waugh.

## I.   Relevant Factual and Procedural Background[2]

Applegate's complaint stems from alleged mistreatment at Kentucky correctional facilities, namely at Northpoint Training Center, during a period of incarceration following a conviction for possession of child pornography.[3] The record does not contain the underlying judgment, which has allegedly since been vacated.[4] Generally, Applegate contends that correctional officers subjected him to cruel and unusual punishment (via deliberate indifference analysis) under the 8th Amendment and 42 U.S.C. § 1983, that correctional officers conspired to deprive Plaintiff of his civil rights under 42 U.S.C. § 1983, that correctional officers acted negligently in their care of Plaintiff, and that correctional officers violated Kentucky Administrative Regulation, Chapter 501, 3:110,

---

[2] The Court spends no time on analysis of allegations concerning a) locations other than Northpoint or b) persons other than named Defendants. In this action, Applegate makes a broad range of assertions involving several facilities and several persons that are not before the Court. Under § 1983, the Court will assess the liability of the individual defendants and not unsued persons. *See Rizzo v. Goode*, 96 S. Ct. 598, 606 (1976) (holding that a showing of "direct responsibility" for actions on the part of the individual named in the complaint is necessary for recovery under § 1983). Lt. Humfleet is not a party. Officer Bray is not a party. Though both feature centrally in part of Applegate's tale, neither is a defendant subject to claim analysis.

[3] The parties do not specifically identify the conviction. Defendants refer to it only as a felony offense, and Plaintiff acknowledges that it was a conviction "stemming from charges of possession of child pornography." DE #24 at 1-2. In a letter penned by Plaintiff, he admits a conviction under KRS § 531.335, or possession of child pornography. DE #18-1 at 4.

[4] The record is conflicting as to which Kentucky court actually granted Applegate's habeas petition and vacated his conviction. Plaintiff's affidavit indicates that the Kenton Circuit Court ultimately vacated his conviction, DE #24-1 ¶ 2, but his response cites the Muhlenburg Circuit Court. DE #24 at 5. The discrepancy is not significant to the decision.

by failing to properly classify Plaintiff under the Kentucky inmate classification system. Applegate seeks actual and punitive damages in unspecified amounts.

In July 2012, the Kentucky Department of Corrections transferred Plaintiff from the Otter Creek Correctional Center to the Northpoint Training Center. DE #18-6 at 2. Upon his arrival, the facility housed Applegate in a dormitory in the general population. On August 22, correctional officers discovered Applegate in possession of images containing child pornography. DE #18-8 (Disciplinary Report Form).[5]  On that date, Plaintiff was in administrative segregation. DE# 18-6 at 2. Officers filed a disciplinary report form concerning the contraband. DE #18-8. An administrative hearing officer found Applegate guilty of possession of child pornography on September 13, 2012. DE #18-8 at 3. As a result, Applegate lost 180 days good time credit and received 90 days disciplinary segregation.

The chronology and events that led to Applegate's initial segregation placement are unclear if not disputed. Defendants suggest the photo discoveries prompted segregation. Plaintiff claims he was there for protection. Certainly, even the photo-related discipline report says that the discovery occurred in segregation, DE #18-8 (listing offense in "Segregation Unit"), so he had to have been there already when the discovery occurred. Indeed, Applegate says the paper search occurred because he entered the segregation unit.   DE #24-1 (Applegate Affidavit) ¶ 8.  This seems more plausible on the record.  Resolving this issues does not matter in the analysis of the current motion.

---

[5] Applegate alleges that he received the pictures as part of his underlying case file, which his defense attorney sent him to review for potential appeal. DE #24 (Response) at 1-2. Plaintiff alleges that he was unaware that the photographs were included in the file. DE #24-1 (Affidavit).

On August 25, 2012, inmate Dwayne Mitchell threw feces from his cell through his food tray slot or "bean flap" at Applegate while he (Applegate) walked back to his cell. DE #18-9.  Mitchell also yelled out at Applegate, "Get off the walk chomo." Officers ultimately found feces on 5 different cells and "in the cracks, on the walls and floors around these cells." *Id.*  A hearing officer adjudicated Mitchell guilty of creating or causing a health hazard and disciplined Mitchell. Officers reassigned Plaintiff to another bed in the segregation unit the same day. DE #18-6. Applegate was not disciplined in conjunction with the incident.

Plaintiff alleges that, when moved to his new cell, Officer Hoeck left the bean flap to his cell open. DE #24-1 (Applegate Affidavit) at 2, ¶ 19. Applegate alleges that another inmate subsequently "repeatedly filled Styrofoam cups full of urine and paper towels and threw them through the bean flap into my cell." *Id.* at ¶ 20. Applegate contends that, in response to his request that officers close the bean flap, correctional officers, including Officer Hoeck, who allegedly knew of the precipitating reason for Plaintiff's cell transfer (inmate Mitchell's feces attack) laughed and refused. *Id.* at ¶¶ 21, 22.  Plaintiff passed a sealed note to Officer Bray (not here named as a Defendant) pertaining to the urine assaults. The letter requested cleaning supplies and blankets, asking further that officers close the bean flap. *Id.* at ¶¶ 24, 25. Applegate alleges that officers did not respond to the note and that other inmates gained possession of it, ultimately prompting a physical attack on Applegate by another inmate on August 28. *Id.* at ¶¶ 27, 28. Plaintiff did receive a blanket within a day of requesting bedding; he also received a scheduled cell cleaning. *Id.*

On August 28, while being placed in Applegate's cell, inmate Terry Waugh physically assaulted him. DE #18-10 ("When inmate Waugh was uncuffed, Waugh attacked inmate Applegate."). Applegate here submits an affidavit by Victor Downs, indicating that Downs warned Sergeant Wilson against placing another inmate in Applegate's cell. DE #24-2 (Downs Affidavit). Downs alleges that Sgt. Wilson "dismissed" his concerns. *Id.* Per Downs, Waugh yelled out several times in advance of and during the move that he would assault Applegate if moved into his cell. Downs allegedly expressed concern again to Sgt. Wilson, stating it "'would not turn out right.'" *Id.* Wilson allegedly responded, "'I don't give a shit.'" *Id.*

Downs indicates that Waugh continued to threaten violence against Plaintiff during the move. Other inmates also made calls for violence against Applegate. While Applegate was handcuffed, Wilson placed Waugh into Applegate's cell and uncuffed him. "Immediately after the handcuffs were removed, inmate Waugh began to assault inmate Applegate while inmate Applegate was still handcuffed." *Id.*

Officer Wood called for back-up, and Waugh ultimately ceased fighting.[6] Following a hearing, officials convicted Waugh of physical action/force against another inmate and disciplined him. *Id.* Waugh made a statement in connection with the attack, alleging: "They didn't have to tell me to stop fighting I only threw three punches." *Id.* at 5. Correctional officers did not discipline Applegate in relation to the incident.

As a result of Waugh's attack, Applegate alleges that he suffered a laceration under his left eye, his right eye swelled shut, and he experienced dizziness, nausea, and

---

[6] Plaintiff and Downs both allege that Sgt. Wilson countermanded Officer Wood's directive to open the cell door after the fight began. DE #24-1 (Applegate Affidavit) at ¶ 37; DE #24-2 (Downs Affidavit).

pain. DE #24-1 (Applegate Affidavit) at 4, ¶ 40. Applegate also indicates that, approximately 7 days after the attack, he received a letter from Waugh. (Downs alleges that he facilitated delivery of the note from Waugh to Applegate. DE #24-2 (Downs Affidavit) at 2. Downs has no knowledge of the note's content.) Per Plaintiff, the correspondence indicated that Waugh was paid to attack Applegate. *Id.* at ¶ 42. There is no competent proof of the note's substance—the note is not in the record and Waugh is not an affiant.

The Kentucky Department of Corrections transferred Plaintiff from Northpoint Training Center to Eastern Kentucky Correctional Complex on November 20, 2012. He remained at that facility until January 2013, at which time he was transferred to Green River Correctional Complex. DE #18-6 at 2. Officials released Applegate because of state court action in April 2013. He filed this case in August 2013.

Although the precise claims are not crystal clear, Applegate essentially premises the complaint, against various involved guards, on 8th Amendment deliberate indifference principles (as to the Mitchell incident, the cell conditions post-relocation, and the Waugh incident). He includes civil conspiracy, a claim related to proper classification under Kentucky's system, and state law negligence theories.

## II.  Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986);

*Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106 S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006). That is, the Court only considers information if a litigant could properly present it in a form that would be admissible at trial.

### III. Analysis

#### A. The exhaustion requirement of the PLRA does not apply to Applegate.

Defendants contend that summary judgment is appropriate because Plaintiff did not exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). DE #18 (Motion) at 15-21. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Specifically, Defendants, who detail a long list of administrative grievance by Applegate, allege that Plaintiff did not exhaust as to the claims at issue. DE #18 (Motion) at 15-21.

8

Plaintiff asserts that the PLRA does not here apply because he filed the complaint *after* being released from custody. Per Applegate, the state circuit court granted his habeas petition on April 18, 2013, *see supra*, n.4, and the Kentucky Department of Corrections released him. Defendants agree that Applegate gained release in April 2013. Thus, when he filed the instant Complaint on August 21, 2013, Plaintiff was not in custody. DE #24 (Response) at 5-6. Alternatively, Applegate contends that he could not access the grievance process and that the Court should excuse him from the exhaustion requirement. *Id.* at 6-7. Defendants' reply, unburdened with law, does not substantively further their position. DE #26.

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h). Thus, the plain language of the PLRA, which examines a litigant's status *at the time of filing*, supports Plaintiff's position. *Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1150 (10th Cir. 2005) (collecting cases). Additionally, "[e]very circuit court to consider this issue has held that the PLRA's exhaustion provision does not apply to individuals who had already been released at the time of filing." *Caddell v. Livingston*, No. 4:14-CV-3323, 2015 WL 1247003, at *2 (S.D. Tex. March 17, 2015) (collecting cases); *see also Bell v. Zuercher*, No. 10-72-ART, 2011 WL 5191800, at *2 (E.D. Ky. Oct. 31, 2011) ("Thus, as this Court has held before, 'the PLRA does not apply to former prisoners, even though the claim may have arisen while the Plaintiff was previously incarcerated.' Because Bell was no longer a prisoner when he started his lawsuit, the exhaustion requirements of the PLRA do not apply to him."

(quoting *Dishman v. Corr. Corp. of Am.*, 2010 WL 3294679, at *5 (E.D. Ky. Aug. 20, 2010))); *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 675 (E.D. Ky. 2002) (holding the PLRA's exhaustion requirement inapplicable when plaintiff was not incarcerated when she filed her complaint).

Accordingly, based on the strong authority, to which Defendants make no effective counter, the Court does not apply the exhaustion requirements within the PLRA to bar Plaintiff's claims. He was not a prisoner, as defined by § 1997e(h), at the time of filing. Thus, even if Applegate did not strictly adhere to prison grievance procedures, his failure to do so does not impact the Complaint.

> **B.  *Plaintiff does not present prima facie evidence of a civil conspiracy claim under 42 U.S.C. § 1983. Defendants are entitled to summary judgment.***

Plaintiff alleges that Defendants conspired under 42 U.S.C. § 1983 to subject him to cruel and unusual punishment in violation of the Eighth Amendment. DE #1 (Complaint) at 13 (Count II). The Sixth Circuit has succinctly stated the standard for a § 1983 civil conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Womack v. Conley*, 595 Fed. App'x 489, 493-94 (6th Cir. 2014). "'It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting

*Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *see also Pulliam v. Dept' of Veteran Affairs and Veterans Hosp.*, No. 3:14-CV-P411, 2014 WL 7004484, at *5 (W.D. Ky. Dec. 10, 2014) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) for proposition that party must allege conspiracy by factual allegations to support "plausible suggestion of conspiracy"). A party may rely on circumstantial evidence to prove the existence of a conspiracy. *Spadafore*, 330 F.3d at 854 (citing *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000)).

Applegate alleges that Defendants Woods, Wilson, and Hoeck conspired to deprive him of safety, to wit, "Defendants deprived Mr. Applegate of his right to be free from attack in order to coerce him or punish him." DE #24 (Response) at 15, 16. Plaintiff generally premises his theory on the idea that correctional officers conspired regarding the timing of disciplinary reports in order to claim that Plaintiff was not in protective custody but in segregation. *Id.* at 17. Specifically, Applegate asserts (without supplying the logic of the argument) that officers waited to file a disciplinary report against inmate Waugh for an attack on Applegate until after reporting adversely on Applegate. Additionally, he alleges that officers worked to deprive him of safety by requiring him to walk back to his cell alone on August 25.

Officers discovered the child pornography materials on August 22, 2012, evidently after the facility transferred Applegate to protective custody on the same date. The disciplinary report form reflects a reporting date and time of August 28, 2012 at 6:29:52 p.m. *See* DE #18-8 at 1. Applegate now alleges that correctional officials told him to "play down the reason he was really placed in protective custody," which related to a prior assault. DE #24 (Response) at 16. After this August 25 meeting, Plaintiff states

11

that he was left to walk back to his bunk unescorted, and ultimately endured having feces thrown at him by inmate Mitchell. He calls the lack of an escort counter to protocol, yet cites no protocol.

On August 28, 2012, at approximately 6:56 p.m., Officers moved inmate Terry Waugh into the same cell as Applegate. Waugh attacked Applegate after being uncuffed. Officer Wood called for back-up, and Sergeant Wilson and Officer Moreland arrived on scene. Waugh subsequently stopped his attack. *See* DE #18-10 (Disciplinary Report). Applegate's argument, in part, is that Wood authored his report approximately 45 minutes *prior to* Waugh's attack, suggesting a civil conspiracy.

The disciplinary violation report indicates that the incident occurred on August 28, 2012 at 6:56 p.m. (The handwritten reports corroborate this time. *See* DE #18-10 at 2-3.) Under the Violation Documentation section, the time prepared reflects "6:12:43 p.m.," or approximately 46 minutes prior to the alleged incident. *Id.* at 4. The report reflects a signed date of August 29, 2012 at 9:47:35 p.m.

Where Applegate sees a coordinated effort to punish or coerce him, the Court sees unexplained (or perhaps even sloppy) paperwork practices. All forms reflect approximated timing. Plaintiff persists in claims only against Wood, Wilson, Hoeck, and Epperson. He points to no connection between any of these as to the Mitchell incident, which allegedly involved Lt. Humfleet, who is not a party. Although Applegate does contend that Wood and Wilson were each involved in the Waugh relocation, he does not provide any factual support, other than the contemporaneous presence of each, that would indicate a coordinated plan. Presence is not agreement. Epperson had no evident role in either incident, certainly nothing to contribute toward a conspiracy analysis. Hoeck's

placement in the "bean flap" claim again is without a bridge, of fact or logic, to the other

defendants. Applegate's "'web of inference[s] is too weak' on the alleged facts to permit

a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful

objective." *Harris v. Dept. of Cmmty. Based Servs.*, No. 5:14-CV-14, 2014 WL 2600073,

at *7 (W.D. Ky. June 10, 2014) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 603

(6th Cir. 2011)). Defendants are entitled to summary judgment as to civil conspiracy.

> C. *Defendant Hoeck is entitled to summary judgment on Plaintiff's deliberate indifference claim; the record shows that, as to Defendant Hoeck, he was not aware of and disregarded any risk to Applegate's safety. Defendants Wilson and Wood are not entitled to summary judgment because there is a genuine dispute of material fact as to the case key: that Wilson and Wood knew of and deliberately disregarded a sufficient risk to Plaintiff's safety on August 28, 2012.*

Although the Constitution does not "mandate comfortable prisons," prison

officials "have a duty . . . to protect prisoners from violence at the hands of other

prisoners." *Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994) (citations and quotation

marks omitted). As such, prison officials must take "reasonable measures to guarantee the

safety of inmates." *Id.* (citations and quotation marks omitted). Not all prison injuries are

actionable, however, and in order to succeed on an Eighth Amendment failure to protect

claim, Applegate must establish both an objective and a subjective component. The

objective component requires Applegate to allege a "sufficiently serious" deprivation, *id.*

at 1977, or, more specifically, for a failure to protect/prevent harm claim, Applegate must

demonstrate that he was "incarcerated under conditions posing a substantial risk of

serious harm." Applegate must satisfy the subjective component by demonstrating that

(1) the "official knows of and disregards an excessive risk to inmate health or safety" and

that (2) the official is "aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists" and the official "must also draw the inference." *Id.* at 1979. If an official fails to alleviate a significant risk "that he should have perceived but did not, while no cause for commendation, [this] cannot . . . be condemned as the infliction of punishment." *Id.*; *see also Amick v. Ohio Dep't of Rehabilitation & Correction*, 521 Fed. App'x 354, 357-58 (6th Cir. 2013) (citing *Farmer*); *Derksen v. Causey*, No. 1:13CV-P194-R, 2014 WL 1330193, at *3 (W.D. Ky. April 2, 2014).

    1.   <u>Defendant Hoeck is entitled to summary judgment on Plaintiff's allegations surrounding the events of August 25, 2012.</u>

With respect to Defendant Hoeck, Applegate fails to satisfy the subjective component of the test. Citing *Taylor v. Larson*, 505 Fed. App'x 475, 477 (6th Cir. 2012), Plaintiff alleges that he satisfies the objective component, to wit, that he was incarcerated in conditions posing a substantial risk of harm. However, *Taylor* concerned an inmate placed in a cell covered in fresh fecal matter for three days because he questioned why he was being required to submit a DNA sample. *Taylor*, 505 Fed. App'x at 477.

Per Plaintiff, the precipitating feces attack occurred after other inmates learned that Applegate was incarcerated pursuant to a sex offense conviction. Officers then relocated Plaintiff to a different cell. Applegate now alleges that "Hoeck was aware that failing to close the bean flap to Mr. Applegate's cell would lead to continued assaults and relished in the punishment being inflicted upon Mr. Applegate." DE #24 (Response) at 9. Applegate filed an inmate grievance in response to alleged August 25, 2012 events. DE #18-13 (9/23/12 Inmate Grievance Form). However, the grievance does not name Defendant Hoeck. In his affidavit, Applegate indicates that he asked Officer Hoeck to close the bean flap on his new cell but that Hoeck laughed and refused. DE #24-1 at 3, ¶ 21.

Again, the Court is only assessing allegations against Hoeck. Hoeck was not involved in the August 25 Mitchell incident until the cell relocation. Officers (non-party Humfleet, primarily) immediately had assisted Applegate to get cleaned up, and they also immediately arranged transfer. Hoeck assisted with that transfer. Plaintiff's complaints against Hoeck involve him leaving the bean flap open on the new cell and then later allegedly laughing at Plaintiff, and refusing to take action, regarding urine being thrown through that bean flap.[7]

First, there is no evidence to support that Hoeck knew any attack would occur against Applegate via his open bean flap. Officers had promptly moved Plaintiff from the walk where he had prior trouble. Nothing suggests notice to Hoeck or a perception that someone might use Applegate's bean flap to victimize Plaintiff. If Hoeck laughed at Applegate after the first incident, that rude or irresponsible reaction would not be of constitutional moment. In the sometimes rough and tumble of prison, Applegate did get fresh bedding, had running water, and had a reasonably prompt cleaning of his cell. He moved to 113 on August 25. Per the affidavit, Hoeck allegedly refused to close the bean flap after the first incident, but the timing of later alleged assaults is not reflected in the record or provided by averment. Applegate made his request for a blanket and cleaning supplies to Officer Bray (again, a non-party) on August 26, and Plaintiff received both by some point on August 27. There is no proof that Hoeck denied these things to Plaintiff. The record does not show Hoeck actionably depriving Plaintiff or knowingly exposing him to qualifying risk as an act of punishment.

---

[7] Applegate makes some suggestion that Hoeck allowed an inmate to handle his property unsupervised pending the relocation. That claim, certainly disputed, is not part of the constitutional matters under analysis.

While Applegate's conditions of confinement were unquestionably unpleasant and unsanitary, on a temporary basis, he fails to create a submissible Eighth Amendment violation as to Hoeck. *See Anthony v. Werner*, No. 07-15138, 2008 WL 2447328, at *5 (E.D. Mich. June 18, 2008) (collecting cases and finding no Eighth Amendment violation even after Plaintiff informed guards that he "feared being assaulted" by another inmate); *see also id.* (citing *Zimmerman v. Seyfert*, No. 9:03-CV-1389 (TJM), 2007 WL 2080517, *29 (N.D.N.Y. July 19, 2007) (no Eighth Amendment violation where officer delayed letting plaintiff shower for approximately one-half hour after feces and urine had been thrown on him by another inmate); *Hayes v. Waite*, No. 2:06-cv-101-FtM-29DNF, 2007 WL 2827730, *7 (M.D. Fla. Sept.27, 2007) (no Eighth Amendment violation where other inmates created the unsanitary conditions by throwing feces and urine and where there was no allegation that Defendants failed to clean up after such incidents); *Sterling v. Smith*, No. CV606-103, 2007 WL 781274, *4 (S.D. Ga. Mar.8, 2007) (no Eighth Amendment violation where there was no allegation that "prison officials condone such behavior [throwing fecal matter] or force [inmates] to remain in filthy conditions" and where plaintiff did not "allege that prison officials allow[ed] an unsanitary condition to persist by failing to clean the prison or refusing to provide him with cleaning supplies"); *Snyder v. McGinnis*, No. 03-CV-0902E, 2004 WL 1949472, *9-10 (W.D.N.Y. Sept.2, 2004) (no Eighth Amendment violation where prison officials moved inmate next to plaintiff despite knowledge that they were enemies because risk that feces would be thrown at inmate did not rise to level necessary to sustain claim); *McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, *4 (D. Conn. Jan.18, 2000) (where plaintiff deprived of toilet paper and cleaning supplies for one day, the

court held that although the conditions were not pleasant, "the brief duration of the deprivation causes the court to conclude that the conditions did not constitute an Eighth Amendment violation").

Applegate does not allege that he was not permitted to clean his cell after the attacks, and the purported one day delay in receiving cleaning supplies and a blanket does not, on this record, rise to an Eighth Amendment violation. This is particularly so because Hoeck must be the focus. Plaintiff avers only limited involvement by Hoeck, temporally or otherwise, and none at a level of constitutional concern. Plaintiff articulates no basis for perceiving Hoeck's knowledge that attacks would continue absent closure of Applegate's bean flap. Applegate fails to meet the standard for § 1983 relief.

   2.   Defendants Wilson and Wood are not entitled to summary judgment on
        Plaintiff's allegations concerning the August 28 assault by inmate Waugh.[8]

Applegate contends that Defendants Wilson and Wood knew of (or at least appreciated) the risk of harm to Applegate on August 28, 2012. DE #24 (Response) at 10. Per Plaintiff, inmate Downs "warned Sergeant Wilson that no one should be bunked with Mr. Applegate because of rumors that he was a sex offender and was being repeatedly threatened by other inmates on the '100 walk.'" *Id.*   Plaintiff and Downs allege that Wilson dismissed the concerns. *Id.*; *see also* DE #24-2 (Downs Aff.) at 1. In his affidavit, Downs asserts that officers instructed inmate Waugh to pack his property for a move, and

---

[8] The Court notes that the PLRA, as relevant, requires a prisoner to show a physical injury or the commission of a sexual act to sustain a claim for mental or emotional injury suffered while in custody. *See* 42 U.S.C. § 1997e(e). The Waugh attack includes such a claim, but even as to the earlier event, the statutory requirement is inapplicable to a filing by a non-prisoner.  *See, e.g.*, *Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000) (en banc) ("It is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters."); *Ojo v. Hillsborough County*, 2014 WL 1803309, at *3-4 (D.N.H. 2014) ("The plain language of the relevant statutory provision indicates that the restriction applies to inmates who are confined at the time they filed suit.").

that Waugh yelled out multiple times that he would attack Applegate if placed into a cell with him. DE #24-2 (Downs Aff.) at 1. Downs allegedly again voiced his concerns to the involved guards, stating that things "would not turn out right." *Id.* Wilson then supposedly responded, "I don't give a shit." *Id.*

Officers cuffed Plaintiff and instructed him to move to the back of his cell. During these events, "[o]ther inmates were calling out encouraging an assault against inmate Applegate." *Id.* Wilson and Wood then placed Waugh into Applegate's cell. Wilson allegedly then walked to the end of the walk while Wood removed Waugh's handcuffs. Once free, Waugh began assaulting the still-cuffed Applegate. Wood commanded Waugh to stop and radioed to have the cell door opened. Although the door opened, Wilson allegedly ordered the door closed. Following the arrival of other officers, Waugh stopped his assault, and officers removed him from the cell. *Id.* Downs further alleges that, "[a]bout a week later, inmate Waugh gave me a letter to give to inmate Applegate while I was working on the 400 walk." *Id.* at 2. Downs passed the letter to Plaintiff.

Defendants claim that they "provided a safe environment to protect Plaintiff during the physical assault . . . by inmate Waugh." DE #18 (Motion) at 24. Specifically, Wood allegedly radioed for assistance, and both Wood and Wilson filed incident reports for review and investigation. Defendants also note that Waugh was disciplined for the incident. Applegate received medical attention following the assault. *Id.*

Pursuant to Rule 56(c)(4), Applegate presents 2 affidavits "made on personal knowledge" that set forth otherwise admissible facts. *See* DE #24-1 (Applegate Aff.); DE #24-2 (Downs Aff.). On this record, the Court finds that—in the summary judgment context—Plaintiff meets both objective and subjective components of his Eighth

18

Amendment claim. Downs allegedly advised officers of the risk of placing another inmate in a cell with Applegate. Wilson responded that he "d[idn't] give a shit," and continued with relocating Waugh into Applegate's cell. This is so, despite Waugh—the assaulting actor—allegedly yelling out during transfer and to these Defendants that he would harm or assault Applegate if the men were confined together. Waugh allegedly continued to threaten violence even immediately outside Applegate's cell, and other inmates called out for an attack. DE #24-2 (Downs Aff.). While the Officers' *response* to the assault itself may have been reasonable, *see Morris v. Ward*¸ 2007 WL 951433, at *6 (W.D. Mich. March 27, 2007) ("The federal courts have consistently held that no Eighth Amendment violation occurs [when, upon encountering fighting inmates, officers summon help and assist in restraining and disarming prisoners]."), the issue here is that Officers arguably *enabled* the situation by moving Waugh into the cell, despite his overt warnings and threats of violence. The content of the affidavits create triable issues of fact.

Further, Applegate satisfies the objective component of his claim. "A physical fight between two adult men in a locked cell clearly pose[s] a substantial risk of serious harm." *Amick*, 521 Fed. App'x  at *8; *Kennedy v. Wilson*, No. 10-CV-299-HRW, 2013 WL 5234435, at *5 (E.D. Ky. Sept. 17, 2013) (citing *Amick*).

The Court must view the record and draw inferences in Applegate's favor.[9] Both Plaintiff and Downs aver, by affidavits in proper form, that Wilson and Wood heard direct, overt, and contemporaneous threats from and about Waugh as they executed the transfer of Waugh into Applegate's cell. While cross-examination may well weaken the force of these accounts, the Court must here deny summary judgment as to these

---

[9] Defendants essentially act as if the Downs affidavit does not exist and do not address the effect of his averments.

Defendants. Knowingly placing a person threatening immediate assault into the cell of a cuffed inmate under the particulars here alleged creates a triable scenario under the Eighth Amendment. *See Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011) (citing *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004)) ("[A] prison official may be held to be deliberately indifferent to a substantial risk to inmate safety if he is aware that an inmate is vulnerable to assault and fails to protect him.").

> ### D.  Defendants are entitled to summary judgment on Plaintiff's claim regarding his classification under 501 KAR 3:110.

Plaintiff alleges that Defendants' override of the inmate classification system, as established by 501 KAR 3:110, deprived him of the protections afforded by the classification system. DE #1 (Complaint) at 14 (Count IV). Specifically, Applegate contends that the override placed him in a higher risk group, which ultimately increased the likelihood of violence. DE #24 (Response) at 13. Defendants respond that Applegate is not entitled to and may not premise a claim on any particular classification.

The record reflects that Kentucky originally classified Applegate at Roederer Assessment Center on October 28, 2011. DE #18-2. Although Applegate's original custody level was minimum security, or level 2, the classification official overrode that based on the "nature of severity of [the] crime." DE #18-2. This ultimately resulted in Applegate being a final custody level of 3, or medium security. Staff at the Northpoint Training Center re-classified Applegate at an annual review on November 14, 2012. Applegate's custody level did not change, and the re-classification does not reflect any override.

Plaintiff fails to avoid summary judgment because[10] none of the Defendants were involved in (1) the initial classification and resultant override or (2) the re-classification in 2012. Staff member Felicia Webster conducted the initial 2011 classification, which was approved by Chairperson Sharon M. Veech.  DE #18-2. Jamie Moreland conducted the re-classification in 2012, and Chairperson Craig Hughes approved the final determination. DE #18-5. In short, the Court need not assess the merits of Plaintiff's claim because he fails to show or allege that any of the named Defendants were involved in the classification events.

E.  *Qualified Immunity*[11]

The Sixth Circuit has summarized the qualified immunity analysis:

> Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. . . . When considering a claim of qualified immunity, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'

*King v. Ambs*, 519 F.3d 607, 610 (6th Cir. 2008) (quoting *Saucier v. Katz*, 121 S. Ct. 2151 (2001)).[12] The defense allows "'ample room for mistaken judgments,' protecting

---

[10] The Court doubts but does not analyze whether there is any right to classification. The individual defendants did not classify Applegate; the claim thus is not properly before the Court.

[11] Plaintiff made no response to the state immunity argument under *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). The Court treats this as a concession by Applegate. In context, this has little effect. The Court has found no basis for the regulatory/classification claim or any claim against Hoeck or Epperson. The Court will permit the deliberate indifference claim against Wilson and Wood relative to the Waugh assault. To the extent the Complaint attempts any further state law theory under the negligence rubric, the Court finds that the unopposed *Yanero* argument disposes of such claim.

'all but the plainly incompetent or those who knowingly violate the law.'" *Essex v. Cnty. of Livingston*, 518 Fed. App'x 351, 356-57 (6th Cir. 2013) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (2009)). Once raised as a defense, a plaintiff must show "'specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity.'" *Goad v. Mitchell*, 297 F.3d 497, 501 (6th Cir. 2002) (quoting *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995)).

"The Eighth Amendment 'encompasses an inmate's right to be protected from harm by fellow inmates,' but 'prison officials violate this right only when they exhibit a deliberate or callous indifference to an inmate's safety.'" *Edwards v. South Dakota,* No. 10-4176-KES, 2014 WL 575726, at *3 (D.S.D. Feb. 11, 2014) (quoting *Tucker v. Evans*, 276 F.3d 999 (8th Cir. 2002)). Prison officers are not "expected to prevent all inmate-on-inmate violence." *Francisco v. Hebert*, No. 05-1850, 2007 WL 1805772, at *4 (W.D. La. June 21, 2007) (internal quotation marks and citation omitted). An officer may be entitled to qualified immunity if an inmate suffers injury by a surprise attack from another inmate. *See Morris v. Ward*, 2007 WL 951433, at *1 (W.D. Mich. Mar. 27, 2007) (citing *Tucker*, 276 F.3d at 1001 and stating: "We have held in several cases that qualified

---

[12] "In interpreting the Supreme Court's test for qualified immunity, Sixth Circuit panels vary in using either a two-part or three-part approach, both of which 'can be said to capture the holding' of *Saucier*." *Zulock v. Shures*, 441 Fed. App'x 294, 301 (6th Cir. 2010) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005)). The occasional third prong increases analytical clarity by examining whether "'the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* at 302 n.2 (quoting *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)). As the Sixth Circuit has also noted, however, "'the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable.'" *Id.* (quoting *Estate of Carter*, 408 F.3d at 311 n.2).

immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate."); *see also Tucker*, 276 F.3d at 1001 (collecting cases). Prison officials may also avoid liability if "'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was unsubstantial or nonexistent. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," not absolute safety.'" *Bates v. Elwood*, No. 6:06-CV-539-KKC, 2008 WL 2783190, at *9 (E.D. Ky. July 16, 2008) (quoting *Savocchio v. Crabtree*, No. CV-97-1698-ST, 1999 WL 562692, at *5 (D. Or. July 12, 1999) (quoting *Farmer*)).

The Court has carefully parsed the proof. The Court would here award Defendant Hoeck, as to whom there was no constitutional violation, qualified immunity. However, and viewing the facts in Applegate's favor, the sworn statements that Plaintiff adduces provide sufficient evidence to implicate a substantial risk of harm to Plaintiff (known to and ignored by both Wood and Wilson). Here, Downs allegedly warned officers about the potential risk of rehoming Waugh in Applegate's cell. Waugh allegedly expressed repeated threats toward Applegate in the time immediately prior to the move, and at the time of the move. Indeed, other near-by prisoners encouraged an attack. (The prior trouble on walk 300 and at Plaintiff's new cell validate the gravity or credibility of the risk.) This is sufficient to raise a factual question about a cognizable but disregarded threat under the Eighth Amendment.

The Court does view the right at issue – to be free from violence from other inmates – as clearly established. *See Bishop*, 636 F.3d at 766 ("Furthermore, on several occasions we have recognized an inmate's right to be free from prison violence as clearly

23

established."). The facts on this record support a right violation only as to Defendants Wood and Wilson. Waugh expressed overt threats of harm toward Applegate, and the record reflects that both Wood and Wilson participated in the move with the threats and risk starkly before them. Neither is entitled to qualified immunity.

### IV. Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** Defendant's motion for summary judgment (DE #18).[13] The Court **GRANTS** the motion as to all claims except Plaintiff's Eighth Amendment claim against Defendants Wood and Wilson. Further, neither Wood nor Wilson is protected by the doctrine of qualified immunity. The Court **GRANTS** (as unopposed by Plaintiff) the motion to dismiss (DE #19).

The action remains pending only as to Defendants Wood and Wilson.[14]

This the 24th day of September, 2015.



Signed By:

_Robert E. Wier_

United States Magistrate Judge

---

[13] Plaintiff included Epperson in the Complaint but did not make allegations or averments in support of claims against him in the summary judgment context. The Complaint itself offers no direct criticisms of or assertions against Epperson that would suggest liability. As such, and because the Court here must evaluate whether any individual defendant may have liability based on the acts of that individual, the Court grants summary judgment to Epperson.

[14] *See* DE #29 concerning the status of unserved Defendant Mandell.